IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2002

## STATE OF TENNESSEE v. RICKY  E. PULLEN

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-49469     James K. Clayton, Jr., Judge**

---

**No. M2001-02140-CCA-R3-CD - Filed December 30, 2002**

---

The defendant, Ricky E. Pullen, was indicted by a Rutherford County Grand Jury on one count of rape of a child and one count of aggravated sexual battery.  After a jury trial, the defendant was convicted of aggravated sexual battery and acquitted of child rape.  The trial court sentenced him as a violent offender to eight years in the Department of Correction.  Only one issue is raised on appeal: whether the evidence was sufficient to convict the defendant of aggravated sexual battery.  We conclude that the evidence was sufficient and affirm the conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Gerald L. Melton, District Public Defender, and Russell N. Perkins, Assistant District Public Defender, for the appellant, Ricky E. Pullen.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On April 23, 2000, the twelve-year-old victim attended a sleepover at the apartment of Ruth Smith.  The victim lived in the same Murfreesboro apartment complex and was friends with Ms. Smith's fourteen-year-old daughter, Myah.  Other children in attendance included the victim's brother, Myah's two brothers, and two friends named Kia and Tisha.  The girls' plan for the evening was to "watch movies and just hang out."

At some point that night, the defendant, twenty-nine-year-old Ricky Pullen, arrived at Smith's apartment.[1] Ms. Smith testified that she had known the defendant for four or five months and that he was a frequent visitor at her apartment who would sometimes spend the night if "he was locked out or him and his girl would get into it." On this occasion, a woman named April accompanied the defendant, and the two of them proceeded into a bedroom and closed the door. Ms. Smith "thought that was a little unusual" and asked that they leave which, after about thirty minutes, they did. The defendant procured a twelve-pack of beer and a "Master Pete" videotape before returning, by himself, to Smith's apartment.

The defendant entered the living room where the children were watching movies and eating popcorn and fell asleep in a chair. According to his own testimony, "I went and got me a beer and I came back and sat in the chair. I took a little swallow of it and fell asleep." With the defendant in the room, the victim fell asleep under a blanket on the living room floor sometime after midnight. Myah Smith, asleep on the couch, was the only other child in the living room, as all the other children retired to various bedrooms inside the three-bedroom apartment.

The victim testified that, early the next morning, she was awakened by the defendant throwing popcorn in her face. The victim said, "I looked around and he was looking at me. So I didn't think nothing of it so I just went back to sleep." This peculiar incident repeated itself two more times. After the third occurrence, the victim got on her knees to brush the accumulated popcorn off of her. The victim testified that, at this time, the defendant "came behind [her] and was moving the popcorn for [her]." She said, "He put his arms around my waist to move it out of the way. . . . He got back up and I laid back down and then he came and got on top of me and I pushed him off." The victim testified that she was lying facedown under a blanket and the defendant laid facedown on top of her. About ten minutes later, the defendant laid on top of her again, and she pushed him away. Approximately five minutes passed and the defendant got on top of the victim a third time. This time, however, he put his tongue in her ear and whispered, "Don't tell nobody." She pushed him off again, and he laid down beside her.

With the defendant now facing her on the floor, the victim testified that he put his hand in her underwear and between her legs for "[p]robably half a second" before she pulled it out. The defendant again put his hand in the victim's underwear for "[h]alf a second or a second." Again, she pulled his hand out of her underwear. Although she could not recall which of the two times it happened, the victim testified that the defendant digitally penetrated her and that it hurt. According to her testimony, she told him to stop but did not call out for help because she was scared.

The only other person in the room, Myah Smith, testified that she woke up and saw the defendant on the floor by the victim, "feeling on her" with his hand "[d]own in her pants." The defendant got up quickly, looked toward her and "grinned," and sat back down in the chair.

---

[1] The testimony differs as to what time the defendant actually arrived, but it appears to have been sometime between 8:00 and 11:00 p.m.

Subsequently, the defendant exited the room, told Ms. Smith he was leaving, and left the apartment.[2]

That morning, the victim told her brother and mother about what had happened. Her mother testified that the victim looked "like she was shocked" from the moment she returned home from Smith's apartment. After the victim left to return home, Myah told her mother about the incident.

The Murfreesboro Police Department was contacted that morning, and the defendant was arrested shortly thereafter.

## ANALYSIS

### I. Standard of Review

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639

---

[2]The testimony differs as to what time the defendant actually departed, but it appears to have been sometime between 6:15 and 7:00 a.m.

S.W.2d 913, 914 (Tenn. 1982). When the credibility of the witnesses was resolved by the jury in favor of the State, the appellate court "may not reconsider the jury's credibility assessments." State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000), cert. denied, 533 U.S. 953, 121 S. Ct. 2600, 150 L. Ed. 2d 757 (2001).

## II. Sufficiency of the Evidence

The defendant argues that the evidence adduced at trial was insufficient as a matter of law to convict him of aggravated sexual battery as defined in Tennessee Code Annotated section 39-13-504(a)(4). The defendant specifically argues that the State did not prove that the victim was under the age of thirteen and that impeachment of the State's witnesses made their testimony incredible.

Aggravated sexual battery is defined, in pertinent part, as follows:

> (a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> (4) The victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-504(a)(4). By definition, "sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. See Tenn. Code Ann § 39-13-501(6). "Intimate parts" is defined to include the primary genital area, groin, inner thigh, buttock, or breast of another. See Tenn. Code Ann. § 39-13-501(2).

The defendant's argument that the State did not prove that the victim was under the age of thirteen is without merit. The incident occurred on April 23, 2000, four months before the victim turned thirteen. Under oath, the victim testified that she was born on August 25, 1987, and that she was twelve years old at the time of the incident in question. Every person is presumed competent to be a witness except as otherwise provided in the Tennessee Rules of Evidence or by statute. See Tenn. R. Evid. 601. To testify to a matter, a witness must have personal knowledge of that matter. See Tenn. R. Evid. 602. Here, there is no legal reason why the victim's testimony was insufficient to prove her age or that the State was required, as the defendant suggests, to offer "official documentation" of age. See State v. Banes, 874 S.W.2d 73, 78 (Tenn. Crim. App. 1993) (in an aggravated rape case, victim's testimony that she was eleven years old at the time of intercourse was sufficient proof that the victim was under the age of thirteen). Although it is the State's burden to prove every element of a crime, the proof of the victim's age was never challenged by the defendant at trial. On appeal, the defendant offers no authority, nor are we aware of any, that the testimony of a victim is insufficient to establish the victim's age. Furthermore, the investigating police officers,

Tommy Massey and David Harrison, testified without objection that she was twelve at the time. Accordingly, we conclude that the testimony at trial was sufficient to prove beyond a reasonable doubt that the victim was under the age of thirteen when the aggravated sexual battery occurred.

The defendant next argues that the impeachment of the State's witnesses that took place during cross-examination rendered their testimony incredible. Specifically, he asserts that four inconsistencies seriously undermine the credibility of the State's witnesses. The fact that the witnesses were impeached does not necessarily make the evidence insufficient to convict the defendant of aggravated sexual battery.

First, on direct examination, Myah Smith, who was in the room with the victim and the defendant, testified that the defendant "was feeling on her" with his hand "down in her pants." On cross-examination, she testified that, during a pretrial interview, she never mentioned "any kind of touching" and that the first time she said she had witnessed the defendant touching the victim was on direct examination. Second, on both direct and cross examinations, the victim testified that she was "not sure" whether the defendant "placed his finger inside of [her] the first time or the second time" he put his hand in her pants. Third, the victim testified that she told her brother about the incident as they were walking home from the Smith residence. Her brother testified, however, that the victim told him about it before they left the apartment. Fourth, after the third time the defendant laid on top of the her, the victim testified that she thought he had left the room while Myah Smith testified that he sat down in a chair.

In making this argument, the defendant fails to acknowledge the inconsistencies of his own statements. He first told Officer Massey that he was not at the Smith residence on the night in question. When Officer Massey suggested to him that he could prove that he was there that night, the defendant later recanted this story and claimed to have been there until 4:00 a.m. Ruth Smith testified that he was there until 7:00 a.m. During his direct examination, the defendant testified that he left at 6:15 a.m. and that he did not recall what he told the police when he was questioned about his whereabouts on the night in question.[3]

Additionally, the defendant asserts that, because he was acquitted of the charge of child rape, the jurors did not believe the victim's testimony on the issue of penetration.[4] He reasons that if the jury chose not to accredit the victim's testimony on that issue, it necessarily follows that they should not have believed her testimony concerning any sexual contact that may have taken place between her and the defendant. However, we respectfully disagree. The credibility of the witnesses was resolved by the jury in favor of the State, and the appellate court "may not reconsider the jury's credibility assessments." Carruthers, 35 S.W.3d at 558. The reconciliation of conflicts in testimony is a matter entrusted exclusively to the jury as the triers of fact. Byrge v. State, 575 S.W.2d 292, 295

---

[3]Because the record for appellate review does not contain a transcript of the State's cross-examination of the defendant, we are unable to determine whether the State impeached the defendant about his own conflicting statements.

[4]Child rape, as defined in Tennessee Code Annotated section 39-13-522(a), requires unlawful sexual penetration of the victim by the defendant or the defendant by the victim.

(Tenn. Crim. App. 1978). In Tennessee, great weight is given to the result reached by the jury in a criminal trial. State v. Matthews, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993). The jury's verdict demonstrates that they believed the testimony of the State's witnesses and discredited the testimony of the defendant. Considering the testimony in the light most favorable to the State, the evidence shows that the defendant twice put his hands in the pants and fondled the genital area of a victim under the age of thirteen. Accordingly, we conclude that the evidence was sufficient to allow a rational jury to have found the essential elements of the crime proven beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's judgment of conviction.

_____
ALAN E. GLENN, JUDGE